**O'LEARY v. DIELSCHNEIDER et al.**

No. 13346.

United States Court of Appeals
Ninth Circuit.

May 25, 1953.

5. Ake v. Birnbaum, 156 Fla. 735, 25 So.2d 213.

Holmes Baldridge, Asst. Atty. Gen., Paul A. Sweeney, Leavenworth Colby, Benjamin Forman, Attys., Department of Justice, Ward E. Boote, Asst. Sol., Herbert P. Miller, Atty., Department of Labor, Washington, D. C., Henry L. Hess, U. S. Atty., Donald W. McEwen, Asst. U. S. Atty., Portland, Oregon, for appellant.

Brown & Van Vactor, Sam Van Vactor, The Dalles, Or., Frank E. Nash, Portland, Or., for appellee.

Before HEALY, BONE, and POPE, Circuit Judges.

HEALY, Circuit Judge.

This case involves an award under the Longshoremen's and Harbor Workers' Compensation Act[1] of benefits on account of the accidental death of one Clayton May. May's employers (appellees here) sued in the court below to set aside the compensation order. The court tried the case de novo and directed a vacation of the award.

The claim for benefits under the Act was made by Louella May. The deputy commissioner after a hearing made findings as follows: That Clayton May, husband of Louella, was employed by appellees as a truck driver; that on February 9, 1948 he was instructed by his foreman to assist the latter in unloading sand from a barge afloat in the Columbia River and moored at the employer's dock[2]; that in order to board the barge it was necessary for the deceased to follow a path leading to the waters edge and that in following the path May left footprints in the snow; that after boarding the barge May assisted the foreman in taking up slack in the lines, after which he proceeded to shovel sand from the corners of the barge so that the foreman, who was operating the crane, could pick up the sand in the clam shovel; that while engaged in unloading sand from the barge May was instructed by the foreman to proceed to the office of the employer and make out a sales slip in connection with the purchase of sand by a customer who arrived at the yard; that when May failed to follow the instructions of his foreman a search for him was conducted, but he could not be located; that the foreman had followed the tracks in the snow made by May in walking to the waters' edge, prior to boarding the barge, but found no tracks indicating that May had left the barge and returned to the shore; that when last seen alive May was on board the barge; that in accordance with the instructions of the foreman he had attempted to leave the barge, and while doing so fell into the water and was drowned; that a diligent search by the United States Coast Guard failed to locate the body; that at the time of his death May was engaged in maritime employment upon the navigable waters of the United States and that his death arose out of and in the course of said employment.

While the findings do not mention the subject, there is undisputed evidence in the record that May was of a cheerful disposition, that he was an attentive and affectionate husband and father, and that there was no known reason for regarding his disappearance as intentional. It was shown also that his coat was found on the barge at the time of the search.

Appellees sought and obtained from the district court a trial de novo on the issue as to whether or not May sustained an injury resulting in his death upon the navigable waters of the United States. There were pre-trial proceedings and afterwards a full scale trial in which all the facts and circumstances were again inquired into. The court found, among other things, that "[t]he greatest hazard to which Clayton May was exposed at the time of his disappearance was on the shore," and that any inference as to what had happened to him "is sheer conjecture."

---

1. 33 U.S.C.A. § 901 et seq.

2. It appears from the record that there was no dock in the ordinary sense. There was a bumper log afloat in the water between the barge and the shore, fastened to the shore by wires at either end.

The de novo procedure here followed, if supportable at all, is supportable only on the assumption that the doctrine of Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, retains vitality. This court in Western Boat Building Co. v. O'Leary, 9 Cir., 198 F.2d 409, 412, 413, expressed skepticism as to its continued authority, citing Davis on Administrative Law, 1951, p. 920, as one of the many commentators entertaining the view that the doctrine of the Crowell case has long been dead or outmoded. We there thought it unnecessary to decide the point. Here, too, we are of opinion that the present validity of that decision need not be considered.

In the matter before us the only issue on which appellees might be thought entitled to a trial de novo was as to *where* the injury or death of May occurred, not *whether* it had occurred. Yet, as indicated in its opinion, the trial court enjoined and set the award aside on the sole ground that "[t]here is no evidence that Clayton May is dead. There is no evidence that he fell into the waters of the Columbia." The court felt that the insubstantiality of the evidence of his death "is demonstrated by an incident which was given wide publicity in this vicinity years ago." This incident, as recounted by the court, related to the disappearance of a businessman whose automobile was found submerged in the waters of the Columbia River near a point on the highway where it might accidentally have plunged into the river. Some years afterwards the man was discovered living in South America.

■ It is of course true that an inference of death drawn entirely from circumstances may prove afterwards to have been mistaken. But infallibility of judgment is not required in such cases. What is requisite is that the inference drawn by the trier of the fact be a reasonable one. In this instance the circumstances were such as reasonably to permit of the drawing by the deputy commissioner of differing inferences. One would be that actually drawn by him, namely, that May in attempting to leave the barge as instructed by his foreman had fallen into the water and was drowned. Another might be that he had gone ashore, slipped away, and was still alive. A third possible inference, that of suicide, would not, we think, be warranted under the facts in evidence, since § 20, Subd. (d), of the Act, 33 U.S.C.A. § 920(d), dealing with presumptions, provides that it shall be presumed in the absence of substantial evidence to the contrary, "[t]hat the injury was not occasioned by the willful intention of the injured employee to injure or kill himself * * *."

■ The situation before us is closely analogous to that which obtained in Salmon Bay Sand & Gravel Co. v. Marshall, 9 Cir., 93 F.2d 1, involving the claimed accidental drowning of a workman while alone on board a scow under tow by a tug in Puget Sound. His disappearance from the scow was first noticed near the dock at Steilacoom about a hundred yards off shore. Finding on the basis of the circumstances that the man had fallen from the scow and was drowned, the deputy commissioner awarded compensation. On proceedings before the district court to set aside the award, and on appeal to this court, the employer challenged the sufficiency of the evidence to sustain the finding. We said that two inferences were drawable: (1) that the workman fell overboard and was drowned; or (2) that he jumped overboard, swam ashore, and was still alive. Either inference we thought reasonable. Being of opinion that the fact determined was not a jurisdictional one within the doctrine of Crowell v. Benson, supra, we held the determination of the deputy commissioner to be conclusive. That decision controls here.

The granting of a trial de novo was error. The findings and award of the deputy commissioner are supported by substantial evidence and are therefore conclusive.

The judgment is accordingly reversed with directions to dismiss the injunction proceedings.