# 644

471 P.2d 678

Rosendo T. SANCHEZ, Plaintiff-Appellee and Cross-Appellant,

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF VALENCIA, New Mexico, Defendant-Appellant and Cross-Appellee.

No. 403.

Court of Appeals of New Mexico.

April 24, 1970.

Rehearing Denied May 27, 1970.

Certiorari Denied June 24, 1970.

Mary C. Walters, Toulouse, Moore & Walters, Albuquerque, for appellant.

Avelino V. Gutierrez, Albuquerque, for appellee.

OPINION

OMAN, Judge.

This is a suit brought by plaintiffs for personal injuries against the County of Valencia pursuant to the provisions of §§ 5-6-18 to 22, N.M.S.A. 1953 (Repl. 2). It was brought against the county in the name of the Board of County Commissioners, as provided by § 15-45-1, N.M.S.A. 1953 (Repl. 3). The action was predicated upon alleged negligence of defendant in failing to extinguish a fire on a burning bridge, in failing to repair the damage caused to the bridge by the fire, or in failing to place proper devices on the road to warn of the danger created by the burning of the bridge.

Plaintiffs, who are husband and wife, recovered judgments. The trial court granted the wife a new trial. Thus, this appeal by defendant is only from the judgment entered in favor of the husband, Rosendo T. Sanchez, hereinafter referred to as plaintiff.

Defendant relies upon five separate points for reversal. We confine our consideration to the first point, which we feel requires reversal and which is as follows: "THE DEFENDANT BOARD OF COUNTY COMMISSIONERS HAD NEITHER ACTUAL NOR CONSTRUCTIVE NOTICE OF A DEFECTIVE ROAD CONDITION."

The facts are:

(1) A wooden bridge across a drainage ditch on an unpaved county road was observed to be on fire at some time between 8:30· p.m. and 9:00 p.m. on November 21, 1966. Plaintiff had driven over this bridge twice earlier in the evening, the last time being about 7:00 p.m., and it was not on fire at that time.

(2) The person who observed the fire at between 8:30 p.m. and 9:00 p.m. reported it

by telephone to the Belen City Fire Department. Apparently because the fire was outside the city and one of the city's fire trucks was broken down, he was told to call another number, which he later learned was the telephone number of the Valencia County Sheriff's office at Los Lunas. He reported the existence of the fire to a deputy sheriff who served as radio man in the office. Others saw the fire and reported it to the Belen City Police and to a State Police officer stationed at Belen.

(3) Although there are some differences in the evidence as to whether the fire was also reported to the same deputy sheriff by other persons, unquestionably, the deputy sheriff did have notice of the fire, but did nothing about it. He did not report it to any of the County Commissioners, the County Manager, the County Road Superintendent, or to anyone else.

(4) By 6:00 a.m. the following morning the bridge had been almost completely destroyed. About this time plaintiff and his wife started from their home along this road by automobile on their way to Albuquerque. It was just breaking light, and plaintiff was driving. He failed to notice the bridge had been destroyed and was missing. He drove into the ditch and he and his wife were injured.

The sole question presented is whether the trial court was correct in denying defendant's motion for a directed verdict made at the close of plaintiff's case, which motion was renewed after both sides had rested, and in instructing the jury that if it found " * * * that notice of a dangerous condition was given to the sheriff, through his deputy, such notice was notice to the defendant Board of County Commissioners of Valencia County, acting on behalf of the County of Valencia."

Necessary bridges on a highway are a part of such highway [§ 55–2–31, N.M.S.A. 1953 (Repl. 8, pt. 2)], and county bridges are parts of public highways [§ 55–4–1, N.M.S.A.1953 (Repl. 8, pt. 2)]. The duty to maintain and keep public highways in

repair is that of the respective counties in which the highways are located [§ 55–1–2, N.M.S.A.1953 (Repl. 8, pt. 2)], except highways and streets in municipalities [§ 14–50–1, N.M.S.A.1953 (Repl. 3)] and state highways [§ 55–2–18, N.M.S.A.1953 (Repl. 8, pt. 2)].

The Board of County Commissioners is charged with general control and management of all county roads, highways and bridges [§ 55–3–1, N.M.S.A.1953 (Repl. 8, pt. 2)], but it may employ a county road superintendent, who, by resolution of the board, and subject to supervisory powers in the board, " * * * shall have charge of all work of construction and maintenance of county roads and bridges, * * *." [§ 55–3–3, N.M.S.A.1953 (Repl. 8, pt. 2)].

On the dates of November 21 and 22, 1966, the Board of County Commissioners of Valencia County had in its employ a County Road Superintendent, who, within approximately five minutes after receiving notice of the accident at about 7:00 a.m. on November 22, was at the scene of the fire and accident. He immediately proceeded to place barricades to protect the travelling public against the hazard created by the destruction of the bridge. This was consistent with his duties and practice of immediately proceeding to the scene of any hazard on county highways upon receipt of notice of such hazard.

The Legislature defined the powers and duties of the sheriffs and their deputies in §§ 15–40–2, 11, 12, 14 and 15, N.M.S.A. 1953 (Repl. 3), and § 15–40–16, N.M.S.A. 1953 (Repealed 1968), and §§ 39–1–1, 2, 3, 4 and 7, N.M.S.A.1953 (Repl. 6). From a reading of these statutes it is apparent that sheriffs are conservators of the peace, law enforcement officers, and arms of the courts. They have no duties pertaining to the maintenance of roads or the extinguishment of fires. It is true they often remove obstacles from the highways and roads, often receive reports of fires and other hazardous conditions, and often report to the proper authorities the existence of fires, dan-

gerous road conditions, and other hazardous and dangerous conditions which come to their attention. However, no duty is imposed upon them in these regards, except as such, by reason of the circumstances, come within their duties as law enforcement officers and conservators of the peace, and particularly is no duty imposed upon them to receive or relay reports of or to extinguish fires. The Board of County Commissioners had made no attempt to impose such duties upon the sheriff, or his deputies, and neither the Board, the County Manager, nor the County Road Superintendent had authority to impose any such duties upon the sheriff or his deputies. See 4 Antieau, Local Government Law § 34.04 (1966).

Plaintiff contends: "Custom and practice, born out of necessity, dictated that when the nearest fire department refused to respond to a fire call because the fire was outside of the district, the sheriff's office was the only office available to receive such call. * * *" Without deciding whether a custom and practice of notifying the sheriff's office might be sufficient to constitute notice to the Board of County Commissioners of a burning highway bridge, there is nothing before us to support such a custom and practice, and no notice was given to the volunteer fire department, which was not only the closest fire department but actually served the area in which the fire was located.

The Village of Los Lunas, wherein the office of the sheriff is located, had made arrangements with the sheriff to receive calls concerning fires within Los Lunas and to report them to the Village Fire Department. However, no such arrangement had been made between the sheriff and the Board of County Commissioners to receive and report to the Board, or to other proper authorities, the presence of a fire in the county, and particularly a fire upon a county highway bridge.

In retrospect it would appear the accident may have been averted had the deputy, upon receiving notice the bridge was on fire, notified the County Road Superintendent, the County Manager, a member of the Board of County Commissioners, or, perhaps, the volunteer fire department which had been organized and was serving the area in which the fire was located. However, because he failed to do so does not impose upon the county legal responsibility for plaintiff's injuries and damages.

Until the county had either actual or constructive notice of the danger, it could not be held liable in tort for plaintiff's injuries and damages. 4 Antieau, supra, § 38.14; 19 McQuillin, Municipal Corporations § 54.113 (3rd Ed.Rev.1967). In view of the location of the bridge, the time during which the fire destroyed it, and the length of time between the first discovery of the fire and plaintiff's accident, we are of the opinion the defect or danger did not exist for a sufficient period of time to make reasonable an inference that the county officials, charged with the responsibility of maintaining the bridge, knew of the existence of the dangerous condition.

As already stated, the deputy sheriff had received actual notice of the fire prior to plaintiff's accident, but he had no official responsibility to receive or relay notice of the fire to the officials charged with the duty of maintenance of county highways or roads. No arrangements had been made with the sheriff to receive or relay such notices to the proper officials, and the proper officials had neither authorized nor attempted to impose upon the sheriff responsibility to receive or relay such calls to them. Thus, actual notice to the deputy sheriff could not have been actual notice to the Board of County Commissioners of Valencia County, as charged by the trial court. See City of Columbus v. Ogletree, 96 Ga. 177, 22 S.E. 709 (1895); City of Catlettsburg v. Sutherland's Adm'r., 247 Ky. 540, 57 S.W.2d 512 (Ct.App.1933); City of Cleveland v. Payne, 72 Ohio St. 347, 74 N.E. 177 (1905); 19 McQuillin, supra, § 54.106a.

Plaintiff relies upon § 5-6-20, N.M.S.A. 1953 (Repl. 2), which provides for the

maintenance of suits against " * * * state, county, city, school district, district, state institution, public agency, or public corporation of the state and the persons involved for the negligence of officers, deputies, assistants, agents or such employees in the course of employment; * * *."

However, here the deputy sheriff, in receiving the call or calls as to the fire and in failing to take any action thereon, was not acting in the course of employment for the Board of County Commissioners, or for the County of Valencia. The sheriff and his deputies are not generally regarded as officers, agents or servants of the county, but as public or state officers. Compare the annotations in 84 A.L.R. 309 (1933) and 156 A.L.R. 1356 (1945) and the cases cited therein. It is to be noted that the annotations specifically exclude cases arising under Workmen's Compensation Acts, which is the nature of the cases involved in Eaton v. Bernalillo County, 46 N.M. 318, 128 P.2d 738 (1942) and Roybal v. County of Santa Fe, 79 N.M. 99, 440 P. 2d 291 (1968), wherein it is stated the sheriff, or a deputy sheriff, is a county employee. It is also to be noted that by Chapter 238 of the Laws of 1967, which appears as §§ 5-1-13, and 5-2-8, N.M.S.A. 1953 (Repl. 2, Supp. 1969), the sheriff and his deputies are designated as county officers for the purpose of taking an oath of office and providing an official bond. However, neither the decisions in these workmen's compensation cases nor this subsequently enacted legislation defining sheriffs as county officers for the limited purposes therein stated, changed the facts that the powers and duties of sheriffs and their deputies are defined by the Legislature, and that boards of county commissioners are given no authority to change or alter these duties, or to impose additional duties.

Plaintiff also relies upon language found in 42 Am.Jur. Public Officers § 8 (1942); 43 Am.Jur. Public Officers § 254 (1942); Baca v. Board of County Commissioners, 76 N.M. 88, 412 P.2d 389 (1966); Primus v. City of Hot Springs, 57 N.M. 190, 256

P.2d 1065 (1953); § 39-1-1, N.M.S.A.1953 (Repl. 6); and § 55-6-11, N.M.S.A.1953 (Repl. 8, pt. 2).

Section 8 in 42 Am.Jr., Public Officers, deals with the concept of a public office as that of a public agency or trust. Nothing stated therein is suggestive of an obligation on the deputy sheriff to perform acts outside the scope of his duties or employment. In fact, it is expressly stated that: " * * *. Such trust extends to all matters within the range of the duties pertaining to the office." As already stated, there was no duty imposed upon the deputy sheriff by statute, instructions, or arrangement with the Board of County Commissioners to receive the call or calls as to the fire, to relay the call or calls to the responsible authority, or to undertake the extinguishment of the fire.

Section 254 in 43 Am.Jur., Public Officers, is entitled "Acts of Officers as Binding Government." There are contained in the text under this title statements of general principles relative to the binding effect of acts of public officers done within the exercise of their authority. Nothing stated therein lends support to plaintiff's position under the facts before us. However, it is stated in the text that " * * * An officer can, however, bind his government only by acts which come within the just exercise of his official powers and within the scope of his authority, unless the government held out the officer as having authority to do the acts. * * *"

Here, as already stated, the deputy sheriff had no obligation or duty in relation to the fire, and the Board of County Commissioners had neither the authority to impose upon him duties such as those which plaintiff has alleged were negligently breached, nor did it hold him out as an officer having authority to do the acts which plaintiff contends should have been done.

In Baca v. Board of County Commissioners, supra, it was a question of fact as to whether the Board had notice of the malfunctioning of a traffic light. What was said therein in this regard is of no signifi-

cance here, because notice to a deputy sheriff of the fire, as repeatedly stated above, did not and could not, under the law and the facts of this case, constitute notice to the Board of County Commissioners.

In Primus v. City of Hot Springs, supra, there was no question concerning notice to the city of the dangerous condition which existed in one of its streets. The notice question related to whether the city had actual or constructive notice that a barrier it had erected had been torn down. The "erection and removal of barricades went on for several weeks" before the unfortunate accident out of which the suit arose.

In the present case, it is undisputed that the road superintendent arrived at the scene of the fire and accident within five minutes after receiving notice thereof. The deputy sheriff unquestionably had time to act on the notice or notices he had received, but notice to him was not notice to the Board of County Commissioners.

Finally, plaintiff argues that it was the duty of the deputy sheriff, as required by § 39–1–1, supra, " * * * to investigate all violations of the criminal laws of the state of New Mexico which are called to the attention of any such officer or of which he is aware, * * *." Section 55–6–11, supra, makes it "* * * unlawful for any person to injure or damage any public highway or street or any bridge, * * * by any unusual, improper or unreasonable use thereof, or by the careless driving or use of any vehicle thereon, or by willful mutilation, defacing or destruction thereof." Thus, plaintiff argues the deputy sheriff had the duty to investigate the fire, and his failure to so investigate constituted the negligence which the jury found proximately caused plaintiff's injuries. In addition to what has been said above concerning the absence of right or power of the Board of County Commissioners to control the activities of the deputy sheriff, at least one fallacy with this argument is that there was no evidence the fire resulted from any criminal act or conduct of any person. Even if the circumstances were suggestive of possible criminal conduct, there is nothing to indicate any of these circumstances were related to the deputy, and there is nothing in the law which required the deputy to abandon his post at the radio and immediately investigate these circumstances.

It follows from what has been said that plaintiff cannot prevail on his cross-appeal.

The judgment should be reversed and the cause remanded with directions to dismiss the complaint of the plaintiff, Rosendo T. Sanchez.

It is so ordered.

SPIESS C. J., and HENDLEY J., concur.